## Mount Joy Borough Annexation Case

*Zimmerman, Zimmerman, Myers & Gibbel,* for petitioner.

*Arnold, Bricker, Beyer & Barnes,* for respondent.

JOHNSTONE, J., August 12, 1966.—By a decree of this court entered on February 1, 1963, the Village of Florin was annexed to the Borough of Mount Joy. The village was located partly in Mount Joy and partly in East Donegal Townships. After unsuccessful negotiations to fix the cost or value of the improvements located within the portion of East Donegal Township annexed by Mount Joy Borough, the supervisors of the township have asked the court to make the determination.

The controlling section of The Second Class Township Code of May 1, 1933, P. L. 103, as added by the Act of August 21, 1953, P. L. 1333, sec. 1, is section 308, 53 PS §65308, which provides: "(a) Except as herein provided, whenever the boundaries of any townships have been altered and a portion thereof has been annexed by a borough or city, the township shall be paid by such borough or city the following costs or value of improvements located within the portion of the township so annexed: (1) the value of all roads improved by the township within five years; (2) the cost of sewer systems constructed by the township within fifteen years; (3) the value of public buildings and improvements other than roads and sewers. The provisions of this section shall not apply to the cost of any road, sewer or facilities which has been assessed against the real property within the annexed territory".

It should be noted at the outset that the code refers to the *value* of all roads improved and the *cost* of sewer systems constructed. It would appear that the legislature intended the words "value" and "cost" to have different meanings, otherwise the same word would have been used in reference to both roads and sewers. These words must be construed according to their common and approved usage, in the absence of any definition in the code: Vitolins Unemployment Compensation Case, 203 Pa. Superior Ct. 183, 189; Commonwealth Trust Company General Mortgage Investment Fund Case, 357 Pa. 349, 355.

The word "value", from such sources as Bouvier's Law Dictionary, Ballentine's Law Dictionary and Webster's New International Dictionary, appears to have the common meaning of the price a thing would bring in the open market, the worth of an object as the marketable price. The word "cost" commonly means the price paid to acquire or produce anything. The words clearly have different meanings, and we feel constrained to use their common meanings in determining the value of the roads and the cost of sewers.

In our opinion, the roads must be valued as of the date of annexation. One common method of determining value is to take the cost of construction and reduce that figure by depreciation based on the life of the object. In the present case, it appears that the legislature considered the life of a road to be five years, since all roads built longer than five years prior to annexation are to be ignored. We will, therefore, adopt five years as the life of the roads in question and use that figure as the basis of depreciation.

The cost of constructing the sewers is not in dispute. The parties agree that the cost of sewers constructed within 15 years is $2,361.25. This is the price paid by the township for constructing the sewers and, under our construction of the code, is not subject to deprecia-

tion. This cost figure will be used as one item in determining the amount due claimant.

Another figure which is not in dispute is the proportion of the net assets of the township for which the borough is entitled to credit on any amount determined to be due the township. This figure is $5,335.09.

The township is claiming a proportionate share of the cost of a zoning ordinance adopted in 1961. The cost of the ordinance was $4,625.03, and the proportion attributable to the annexed area on the same basis as the assets were apportioned would be $915.97. If this item is a proper one to be recovered by the township, it must come under the third classification listed in section 308, to wit: "the value of public buildings and improvements other than roads and sewers". It is undoubtedly the intention of zoning ordinances to improve the community. However, in our opinion, the use of the word "improvements" in the code, in conjunction with the phrase "public buildings", implies the common meaning of an addition to the land which increases its value. We do not consider the passing of a zoning ordinance to be the kind of improvement contemplated by the legislature, and we disallow that portion of the township's claim.

The only other item to be considered and determined is the value of roads improved by the township within five years. This presents a problem primarily because the supervisors did a portion of the work with township labor and equipment, but no attempt was made to maintain records of the costs attributable to the four streets which are under consideration. No criticism is intended of the supervisors for not keeping such records, since they had no way of knowing at the time of construction that they would later be called upon to produce such cost figures. While the burden undoubtedly rests on the township to substantiate its claim, it should not be penalized for failing to keep records

which would permit an accurate calculation. We will endeavor to fix a fair value of the roads improved from the record before us.

There is some difference about the measurement of Chocolate Avenue, but we have accepted the testimony of the township roadmaster that Chocolate Avenue is 900 feet long with an average width of 34 feet, or 3,400 square yards. No dispute exists as to the other streets involved and we will use the measurements stated in the claim. They are: Square Street—4,344.44 square yards; Plum Street—1,244.44 square yards; and Wood Street—1,244.44 square yards.

Chocolate Avenue, Square Street and Wood Street were all reconstructed from the base up, but Plum Street was merely resurfaced. Chocolate Avenue was reconstructed in October, 1962. Thus, at the time of the annexation order, it had been in use for three months, or 3/60ths of the five year life of the street. Square Street was reconstructed in September of 1960 and, as of February 1, 1963, had been in use for 28 months. Plum Street was resurfaced in September of 1960 and had also been in use for 28 months. Wood Street was reconstructed in July of 1961 and had been in use for 18 months at the time of annexation. We will, therefore, depreciate the cost of the various streets by the following percentages: Chocolate Avenue—5 percent; Square Street—47 percent; Plum Street—47 percent, and Wood Street—30 percent.

We have concluded from the testimony offered by claimant that the reconstruction cost of Chocolate Avenue as of February 1, 1963, was $3.30 per square yard, based on an average six inch stone base at a cost of $1.15 per square yard; a two inch penetration at a cost of 90¢; and a three inch surface at a cost of $1.60. We have reduced the cost figure by 35¢ per square yard to allow for 35¢ increased labor cost. No profit is included in the cost figure. Applying the depreciation

figure of 5 percent to the total cost of 3,400 square yards x $3.30, or, $11,200, we find the value of Chocolate Avenue to be $10,659.

The testimony shows that while the construction of Square and Wood Streets was the same type as Chocolate Avenue, the surface material used on these streets was not as expensive as that used on Chocolate Avenue. Instead of using the figure of $1.60 per square yard as the cost of the surface layer which we used for Chocolate Avenue, and in the absence of any specific testimony as to cost, we are arbitrarily cutting the cost figure in half and using 80¢, or a total construction cost figure of $2.50 per square yard. This would give Square Street a total cost of 4,544.44 square yards x $2.50, or $11,361.10, and after deducting depreciation of 47 percent, a net value of $6,021.38.

Wood Street, with 1,244.44 square yards at a cost of $2.50 per square yard, would have a total cost of $3,111.10. Applying the appropriate depreciation figure of 30 percent, the value of Wood Street as of the date of annexation would be $2,177.77.

Plum Street was only resurfaced with a three inch mix at a cost, according to the arbitrary figure of 80¢ used for Square and Wood Streets, of $995.55. Deducting depreciation of 47 percent, we have a value of Plum Street as of February 1, 1963, of $527.65.

We, therefore, determine the value of the roads to be as follows: Chocolate Avenue—$10,659; Square Street —$6,021.38; Wood Street—$2,177.77; and Plum Street—$527.65, or, a total value of $19,385.80. To this figure must be added the cost of sewers in the sum of $2,361.25, or a total of $21,747.05. From that total must be deducted the credit of $5,335.09 due Mount Joy Borough. This leaves a net amount due East Donegal Township of $16,411.96.

And now, August 12, 1966, the court determines that by reason of the annexation of a portion of East

Donegal Township by Mount Joy Borough, there is due the Township of East Donegal for the value of roads improved within five years and for the cost of sewers constructed within 15 years, less credit for the proportion of the net assets of the township represented by the land annexed, the sum of $16,411.96, and Mount Joy Borough is directed to pay said sum to the Township of East Donegal.